**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SCOTT MYERS,**

Plaintiff,

v.

Case No. 2:06-CV-11252
Hon. George C. Steeh

**OFFICE DEPOT, INC.,**
a Foreign Profit Corporation, and
**RON SOREY**, an individual,

Defendants

_______________________________________/

**BUTZEL LONG**
By: Lynne E. Deitch (P26732)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI 48226-4430
(313) 225-7000
**Attorneys for Defendant Office Depot, Inc.**

**WARNICKE & WIGENT, PLLC**
By: Matthew Wigent (P46968)
1701 Cass Lake Road
Keego Harbor, MI 48320
(248) 738-5000
**Attorney for Plaintiff**

_______________________________________/

**DEFENDANT OFFICE DEPOT, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Office Depot, Inc. ("Office Depot") moves this Court pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment for the reasons that Plaintiff Scott Myers is unable to establish a prima facie case of *quid pro quo* sexual harassment, hostile work environment sexual harassment, and retaliation under the Elliott-Larsen Civil Rights Act. The reasons for this Motion are more fully set forth in the accompanying Brief.

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

Pursuant to L.R. 7.1, Office Depot sought concurrence for this Motion from Plaintiff on May 29, 2007, but it was not obtained. It is therefore necessary to bring this Motion before the Court.

WHEREFORE, Office Depot respectfully requests that this Court grant summary judgment in its favor as to all counts of the Complaint and award Office Depot its actual costs and attorney fees incurred in preparing and bringing this Motion.

Respectfully submitted,

**BUTZEL LONG**

By: /s/ Lynne E. Deitch

Lynne E. Deitch (P26732)
Katherine Donohue Goudie (P62806)
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Deitch@butzel.com
Goudie@butzel.com
**Attorneys for Defendant Office Depot**

Dated: May 30, 2007

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**SCOTT MYERS,**

Plaintiff,

v.

Case No. 2:06-CV-11252
Hon. George C. Steeh

**OFFICE DEPOT, INC.**,
a Foreign Profit Corporation, and
**RON SOREY**, an individual,

Defendants

_____________________________________/

**BUTZEL LONG**
By: Lynne E. Deitch (P26732)
Katherine Donohue Goudie (P62806)
150 West Jefferson, Suite 100
Detroit, MI 48226-4430
(313) 225-7000
**Attorneys for Defendant Office Depot, Inc.**

**WARNICKE & WIGENT, PLLC**
By: Matthew Wigent (P46968)
1701 Cass Lake Road
Keego Harbor, MI 48320
(248) 738-5000
**Attorney for Plaintiff**

_____________________________________/

**DEFENDANT OFFICE DEPOT, INC.'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

BUTZEL LONG, A PROFESSIONAL CORPORATION, ATTORNEYS AND COUNSELORS

## STATEMENT OF THE ISSUES PRESENTED

I. Whether Plaintiff's claim of sexual harassment based on a hostile work environment is without merit where:

- with one exception, Plaintiff's complaints involve alleged harassment based on sexual orientation (which is not protected) or on race;
- the one alleged incident that could be characterized as sexual, was an attempted kiss by a male co-worker who, according to Plaintiff's claims, was an "equal opportunity" harasser;
- the alleged attempted kiss by a co-worker was an isolated incident which was not severe or pervasive; and
- once Plaintiff reported the alleged sexual harassment over eight months after the incident, Office Depot took immediate steps to remedy the situation.

II. Whether Plaintiff's claim of *quid pro quo* sexual harassment is without merit where he relies on a single incident involving a co-worker who did not and could not make compliance with his alleged attempted kiss a term or condition of employment,

III. Whether Plaintiff failed to establish that he was retaliated against for complaining about harassment.

IV. Whether Plaintiff's claim for lost wages and benefits should be dismissed because of his failure to mitigate.

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases:**

*Anderson* v. *Liberty Lobby,* 477 U.S. 242, 251-252, 106 S. Ct. 2505 (1986) ....................6, 7

*Barbour* v. *Dep't of Social Servs.,* 198 Mich. App. 183; 497 N.W.2d 216 (1993) ....................8

*Booker* v. *Brown Williamson Tobacco Co., Inc.,* 879 F.2d 1304 (6th Cir. 1989)....................16,17

*Burlington Indus.* v. *Ellerth,* 524 U.S. 742 (1998)....................13

*Burnett* v. *Tyco Corp.,* 203 F.3d 980 (6th Cir. 2000), *cert denied*, 531 U.S. 928 (2000)....................11

*Caleshu* v. *Merrill Lynch Pierce Fenner & Smith, Inc.,* 737 F. Supp. 1070 (E.D. Mo. 1990) aff'd. 985 F.2d 564 (8th Cir. 1991)....................11

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).....6, 7

*Champion* v. *Nationwide Sec.,* 450 Mich. 702, 709,545 N.W.2d 596 (1996)....................14, 15

*Comiskey* v. *Automotive Industry Action Group,* 40 F. Supp. 2d 877, 898, fn. 22 (E.E. Mich. 1999)....................17

*Compare Noble* v. *Brinker Int'l, Inc.,* 391 F.3d 715, 724 (6th Cir. 2004).........18

*Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir. 1986).........17

*Downer* v. *Detroit Receiving Hosp.,* 191 Mich. App. 232; 477 N.W.2d 146 (1991)....................12

*EEOC* v. *Harbert-Yeargin, Inc.,* 266 F.3d 498, 506 (6th Cir. 2001)..............10

*Garg* v. *Macomb Co. Comm. Mental Health Services,* 472 Mich. 263, 273; 696 N.W.2d 646(2005)....................16

*Hartleip* v. *McNeilab, Inc.,* 83 F.3d 767, 777 (6th Cir. 1996)..................12,14

*Holman* v. *Indiana,* 211 F.3d 399, 403 (7th Cir. 2000)..............................10

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

*Kaufman* v. *Allied Signal, Inc., Autolite Div.,* 970 F.2d 178, 186 (6th Cir. 1992)....................14

*King* v. *Hillen,* 21 F.3d 1572 (3rd Cir. 1994)....................11

*Krohn* v. *Sedgwick James of Mich., Inc.,* 244 Mich. App. 289, 300-301; 624 N.W.2d 212 (2001)....................18

*Langlois* v. *McDonald's Rests of Michigan, Inc.,* 149 Mich. App. 309, 311; 385 N.W.2d 778 (1986)....................11

*Matsushita Electrical Industrial Co.* v. *Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986)....................7

*Mayville* v. *Ford Motor Co.,* 2006 Mich. App. Lexis 3226 (Mich. App. Oct. 26, 2006) Unpublished....................8

*Morris* v. *Clawson Tank Co.,* 459 Mich. 256 (1998)....................18,19

*Pena* v. *Ingham County Road Commission,* 255 Mich. App. 299, 310-311 (2003)....................16

*Radtke* v. *Everett,* 442 Mich. 368, 382-383; 501 N.W.2d 155 (1993).......7, 10

*Rasheed* v. *Chrysler Corp.,* 445 Mich. 109, 123 (1994)....................19

*Roush* v. *Kentucky Fried Chicken National Management Co.,* 10 F.3d 392, 400 (6th Cir. 1991)....................20

*Saxton* v. *AT&T Co.,* 10 F.3d 526 (7th Cir. 1993)....................12

*Sheridan* v. *Forest Hills Pub. Sch.,* 247 Mich. App. 611, 622-623; 637 N.W.2d 536 (2001)....................14

*Stone* v. *West,* 133 F. Supp. 2d 972, 987 (E.D. Mich. 2001)....................10

*U.S.* v. *City of Warren,* 138 F.3d 1083, 1098 (6th Cir. 1998)....................18

*Valentine-Johnson* v. *Roche,* 238 F. Supp. 2d 911, 917(E.D. Mich. 2003), *aff'd in relevant part*, 386 F.3d 800 (6th Cir. 2004)....................11

*Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757. 763 (6th Cir. 2006)....................8

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

**Court Rules:**

Fed. R. Civ. P. 56 .......................................................... 20

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

**INTRODUCTION**

Throughout his employment at Office Depot, Plaintiff Scott Myers, an openly homosexual male, failed to take responsibility for problems with his performance. He timed complaints that he was the victim of harassment to coincide with Office Depot's taking action addressing his performance issues. Plaintiff's claims of hostile work environment sexual harassment, *quid pro quo* sexual harassment, and retaliation under the Eliott Larsen Civil Rights Act ("ELCRA")are without merit and should be dismissed.

For the most part, Plaintiff's complaints relate to his sexual orientation, which is not protected. The only incident described by Plaintiff which could arguably be relied on to support a claim of sexual harassment was a male co-worker's allegedly trying to kiss him late one night when they were both drinking in a bar. Even if the incident occurred as described by Plaintiff, it was a single, isolated event, which does not rise to the level of sexual harassment. Further, Plaintiff points to the co-worker's alleged harassment of women. Hostile work environment sexual harassment cannot be based on the actions of an "equal opportunity" harasser. Finally, Plaintiff waited over eight months to report the alleged kiss and once he did, Office Depot took immediate action.

Plaintiff also bases his claim of *quid pro quo* sexual harassment on the alleged attempted kiss by a co-worker. However, key to a claim of *quid pro quo* sexual harassment is that a person in authority makes compliance with requests or demands for sexual favors a term or condition of employment, and the harassment results in a

tangible employment action. Since the individual who allegedly tried to kiss Plaintiff was not a supervisor, he had no authority to make compliance with his alleged attempted kiss a term or condition of employment. The fact that the co-worker later became Plaintiff's supervisor and that he took action to address Plaintiff's performance issues does not and cannot establish *quid pro quo* sexual harassment.

Plaintiff claims that he was retaliated against because he complained about harassment. However, the facts simply do not support Plaintiff's retaliation claims. Plaintiff was placed on a Performance Improvement Process ("PIP") because of his performance, not because of his claims of harassment. He was later terminated when he abandoned his job after failing to appear for a meeting scheduled by Office Depot despite clear warnings of the consequences if he failed to appear.

Finally, Plaintiff did not mitigate his damages. Therefore, even if his claims are found to have merit, his claim for lost wages and benefits should be dismissed.

## STATEMENT OF FACTS

Plaintiff Scott Myers is an openly homosexual, white male. He began working for Office Depot in September 2002, out of its Plymouth, Michigan office as an Account Representative.[1] (Ex. A - Myers Dep. 38-40). His job involved calling on businesses to sell Office Depot's products. (Ex. C - Carr Dep. 12).

During his employment with Office Depot, Plaintiff frequently failed to meet his sales goals. He was counseled about this, both formally and informally. On April 16, 2004, Plaintiff was a given a letter of concern. On July 5, 2004, he received one-on-

[1] The job title was later changed to Business Development Manager ("BDM"). (Ex. B – Sorey Dep. 16-18).

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

one counseling. On August 13, 2004, he was part of a group counseling session on sales goals. Finally, after Plaintiff failed to improve his performance, on October 8, 2004, his supervisor, District Sales Manager ("DSM") Kevin Davis, placed Plaintiff on a Performance Improvement Process ("PIP"). (Ex. D – 10/8/04 PIP.)

When issues were raised with Plaintiff concerning his performance, his response was to blame others. On September 28, 2004, just 10 days before being placed on the PIP (when presumably Plaintiff knew he was underperforming), Plaintiff sent a letter to Human Resources Manager Rebecca Essenburg-Kalch complaining that he faced numerous challenges because he did not receive adequate sales support and also because of "harassment." (Ex. E – 9/28/04 letter). He raised a number of incidents which he claimed constituted "harassment." The complaints related to sexual orientation and an overheard comment, not directed at him that he "perceived to be racial." None of the complaints alleged sexual harassment. In particular, he alleged:

- February 9, 2004 -- overhearing an African-American employee, Freda Moore, say to someone: "We are like brown peanuts in a bunch of cracked white eggshells" (a comment said he perceived as racial);

- April 20, 2004 – a homosexual co-worker, David Krause, saying that he heard Freda Moore make a "sexist remark" about his and Plaintiff's sexual orientation;

- July 26, 2004 – Detroit Free Press columnist Rochelle Riley, who was brought in to speak to the Office Depot employees about diversity, responding to an anonymous question by expressing her personal opinion that, based on her religious beliefs, she opposed gay marriage; and

- September 17, 2004 – finding a faxed flyer about gay marriage anonymously left in his and David Krause's mail slots.

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

(Ex. E – 9/28/04 letter).

Ronald Sorey is a heterosexual, African-American male who also worked in a non-supervisory position as a BDM out of Office Depot's Plymouth office. (Ex. B - Sorey Dep. 73, 128). In September 2005, Sorey was promoted from BDM II to DSM and became Plaintiff's supervisor. (Ex. A - Myers Dep. 42; Ex. B – Sorey Dep. 14-15). After becoming a supervisor, Sorey met with the members of his team as a group and then met individually with those members of his team who had performance issues. He had such meetings with Plaintiff, Emil Abner (an African-American male), and Teri Bond (an African-American female). During each meeting, Sorey discussed the employee's sales performance. He asked each of them to think about whether their position with Office Depot was a good fit and said that he would meet with them again. (Ex. B – Sorey Dep. 80-81, 87-89; Ex. F – 9/9/05 notes.)

Plaintiff informed Sorey during their follow-up meeting that he wanted to continue working in his position. Sorey then told Plaintiff that he would be kept on a PIP for 30 days. (Ex. A – Myers Dep. 44; Ex. G – 9/15/05 PIP; Ex. H – 9/15/05 notes; Ex. I – Chomin Dep. 12-14; Ex. C – Carr Dep. 91-93). Sorey explained that a PIP is used to improve performance. (Ex. B - Sorey Dep. 104). Sorey took similar action with Abner and Bonds, who also said they wanted to continue working in their positions, and issued them letters of concern. (Ex. C – Carr Dep. 91-93).

After meeting with Sorey, Plaintiff contacted Regional Human Resources ("HR") Manager Greg Carr and complained that he thought he was being treated differently. Carr asked Plaintiff to write up his concerns. (Ex. A - Myers Dep. 45-46.)

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

Plaintiff did so in a letter dated September 29, 2005. (Ex. A - Myers Dep. 13; Ex. J - 9/29/05 letter). Plaintiff wrote that the information in the letter "provides the reasons that I feel I have had to deal with name-calling, intimidation, discrimination, harassment, lack of management and ridicule." He repeated the complaints raised in his September 28, 2004 letter, raised additional complaints regarding his sexual orientation, and made a single allegation of a sexual nature. In particular, his new allegations were:

- January 19, 2005 – Sorey making "inappropriate advances" toward him "[a]fter a night of drinking" in a nightclub during the East Region Kickoff meeting in Orlando;

- September 15, 2005 – telling Sorey his "personal opinion" that Davis was "homophobic" and embarrassed him "by covering his ears and rolling his eyes," asking if he had to contact Human Resources any time Plaintiff mentioned his long time partner;

- September 15, 2005 – complaining to Sorey that he thought their meeting was a "personal attack" and might be a result of "what happened between [them] in Florida. . . . (Referring to our sexual encounter)"; and

- September 22, 2005 – finding that an unknown person had poked the eyes out picture of a picture of him and his partner.

(Ex. J - 9/29/05 letter.)

Office Depot took Plaintiff's complaints seriously. After receiving Plaintiff's letter, Carr told Plaintiff to work from home while Office Depot investigated his claims. (Ex. A - Myers Dep. 46). Office Depot then conducted its investigation. A few weeks later, Carr scheduled a meeting for October 28, 2005 with Plaintiff and Regional Sales Director Chris Kelly to discuss Office Depot's findings and to coordinate Plaintiff's return to work. (Ex. A – Myers Dep. 47; Ex. C – Carr Dep. 57.)

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

Plaintiff responded that he "would only attend this meeting if [he] were able to involve a third party to this meeting, either in person or via a conference call." (Ex. K - 10/28/05 letter; Ex. A - Myers Dep. 47-48). Carr reiterated what he had already told Plaintiff on the telephone – that in order to facilitate the meeting, it could be held "in a neutral setting if [Plaintiff] would rather not meet in the office" and that he could attend alone or "bring an employee of Office Depot to support [him] during this discussion." Carr stated that the meeting was rescheduled for Monday, October 31, 2005 at 8:00 a.m. and would only include Plaintiff, Carr and Kelly. Carr warned: "Should you choose not to attend, you will leave us no further option but to end your employment with the company." (Ex. K - 10/28/05 letter.)

Plaintiff did not appear for the meeting on October 31, 2005, did not contact Carr or Kelly, or otherwise return to work. (Ex. A – Myers Dep. 47; Ex. C - Carr Dep. 66). Because he abandoned his job, his employment with Office Depot was terminated effective November 1, 2005. (Ex. C – Carr Dep. 66).

**STANDARD OF REVIEW**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-252, 106 S. Ct. 2505 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-248. A complete failure of proof concerning an essential element of a claim necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-323. A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The non-movant cannot defeat a motion for summary judgment by relying on mere personal beliefs, conjecture, unsubstantiated accusations, speculation and/or blanket denials. *See id.* at 248-49; *see also Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## ARGUMENT

### I.    PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT BASED ON A HOSTILE WORK ENVIRONMENT IS WITHOUT MERIT

In order to establish sexual harassment based on a hostile work environment under the ELCRA, a plaintiff must prove: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of sex; (3) the employee was subjected to unwelcome sexual conduct or communication; (4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Radtke v. Everett*, 442 Mich. 368, 382–383; 501 N.W.2d 155 (1993) (footnote

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

omitted). He must show that he would not have been subjected to the conduct *but for his sex*. MCL 37.2202(1)(a).

**A. Plaintiff Was Not Subjected To Any Conduct On the Basis Of His Sex**

Although Plaintiff claims that various incidents form the basis for his claim of sexual harassment, his claims largely relate to his sexual orientation. The ELCRA does not protect harassment based on a person's sexual orientation. *See, e.g., Barbour v. Dep't. of Social Servs.*, 198 Mich. App. 183; 497 N.W.2d 216 (1993) (dismissing the plaintiff's claim that he was harassed because he was a homosexual).

In *Mayville v. Ford Motor Co.*, 2006 Mich. App. LEXIS 3226 (Mich. App. Oct. 26, 2006)(unpublished),[2] the plaintiff's sexual harassment claim was dismissed where the plaintiff failed to establish that her female supervisor's conduct involved same-gender sexual desire or hostility to the plaintiff's gender. The court found that the supervisor's alleged improper comments and unnecessary touching and bumping into the plaintiff did not arise from any hostility towards women or any motivation of sexual desire on the part of the supervisor. *Id.* at 185. *See also Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757. 763 (6th Cir. 2006) (same-sex harassment claim dismissed where the harassment complained of was based on the plaintiff's perceived homosexuality).

Here, Plaintiff cannot establish that any actions were taken against him on the basis of his sex. Plaintiff's claims about an overheard comment by Freda Moore

---

[2] A copy of this unpublished case is attached at Ex. N.

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

about his and Krause's sexual orientation, his complaint about Rochelle Riley stating that she was personally opposed to gay marriage, the anonymous flyer left in Plaintiff's and Krause's mail slots about gay marriage, Davis' alleged homophobia, and someone anonymously poking the eyes out of a photo of Plaintiff and his partner all relate to Plaintiff's sexual orientation. Plaintiff admitted that many of the complained of "actions were taken against [him] as an employee because of [his] homosexuality." (Ex. A - Myers Dep. 26). Plaintiff complained about an additional statement by Freda Moore about being "like brown peanuts in a bunch of cracked white eggshells." Plaintiff stated that he viewed this comment as being racial. (Ex. A - Myers Dep. 16-17).

The only alleged conduct toward Plaintiff which arguably could be characterized as sexual was the alleged attempt by Sorey to kiss Plaintiff.[3] Sorey is heterosexual. Plaintiff also described sexual conduct that Sorey directed toward women. Plaintiff described an incident where Sorey allegedly made a comment about the physical attributes of a woman who had just entered the room. (Ex. A - Myers Dep. 25). Plaintiff also related an incident in which Sorey allegedly telephoned co-workers Mary Miller and Jan Mouch in their hotel room at three or four o'clock in the morning at a regional kickoff meeting, and asked them to engage in a sexual act. (Ex. A - Myers Dep. 29-30).[4]

---

[3] While Sorey denies Plaintiff's claims (Ex. B – Sorey Dep. 73-77), for the purpose of this Motion, it will be assumed that the actions occurred as described by Plaintiff.
[4] Miller denies the conversation as described by Plaintiff. (Ex. L - Miller Dep. 17-19). However, for purposes of this Motion, Plaintiff's claims are taking as true.

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

Even assuming that Sorey attempted to kiss Plaintiff, it does not establish conduct on the basis of his sex where Plaintiff also points to alleged sexual conduct by Sorey toward women. Courts have held that there is no hostile work environment sexual harassment with an "equal opportunity" or "bisexual" harasser because "such person is not discriminating on the basis of sex." *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 506 (6th Cir. 2001) (quoting *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000)). Because Sorey allegedly targeted both men and woman, Plaintiff cannot demonstrate that he was subjected to any conduct on the basis of his sex.

**B. The Alleged Sexual Advance by Sorey Was Not Severe Or Pervasive**

The conduct complained of by Plaintiff – the alleged attempt by Sorey to kiss him -- was not sufficiently severe or pervasive to amount to a sexually hostile work environment. Plaintiff must come forward with some evidence that a reasonable person would find the alleged conduct or communication of a sexual nature sufficiently "pervasive" and "severe" to create a hostile environment. *Radtke*, 442 Mich. at 394; *see also Chambers*, 232 Mich. App. at 563, *citing Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, L. Ed. 2d 633, 655 (1998) ('[f]or any sexual harassment preceding the employment decision to be actionable, the conduct must be severe and pervasive").

Mere teasing, offhand comments, or isolated incidents, unless extremely serious, do not satisfy this standard, but rather only "extreme" conduct does. *Stone v. West*, 133 F. Supp. 2d 972, 987 (E.D. Mich. 2001), citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). Several courts, including state and federal courts in

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

Michigan, have held that actions more severe than Sorey's alleged attempt to kiss Plaintiff did not create hostile work environments. *See e.g., Langlois v. McDonald's Rests of Michigan, Inc.*, 149 Mich. App. 309, 311; 385 N.W.2d 778 (1986)(a single encounter where a co-employee asked if the plaintiff would like to "have some fun," moved his hips back and forth, placed his hand over her breast, and grabbed her buttocks was not sufficiently severe or pervasive to create a hostile environment); *Burnett v. Tyco Corp.*, 203 F.3d 980 (6th Cir. 2000), *cert denied,* 531 U.S. 928 (2000) (one incident of touching when a supervisor allegedly placed a pack of cigarettes inside the plaintiff's tank top and bra strap, combined with two offensive remarks over a six-month period, were insufficient to create a hostile environment); *Valentine-Johnson v. Roche*, 238 F. Supp. 2d 911, 917 (E.D. Mich. 2003) (two instances of inappropriate contact with a supervisor, coupled with flirting and touching by other employees, insufficient to establish hostile environment); *King v. Hillen*, 21 F.3d 1572 (3rd Cir. 1994)(touching a subordinate's buttocks, thigh and breast, making suggestive comments and telling vulgar jokes did not constitute hostile work environment sexual harassment); *Caleshu v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 737 F. Supp. 1070 (E.D. Mo. 1990) aff'd. 985 F.2d 564 (8th Cir. 1991)(kissing the plaintiff, touching her thigh, telling off-color jokes, inviting her to dinner, and giving her gifts did not establish hostile work environment sexual harassment).

Plaintiff testified that he bases his claim of sexual harassment solely on the one encounter in Florida with Sorey. (Ex. A - Myers Dep. 27). Even if the conduct took place, the single, isolated incident of Sorey allegedly trying to kiss Plaintiff late

one night, in a bar, after they both had been drinking, by giving him "more like a hug" was not sufficiently severe or pervasive to create a hostile work environment.

C. **<u>Office Depot Took Immediate Action Once Plaintiff Complained</u>**

Under the ELCRA, an employer can be held liable for hostile environment sexual harassment only if the employer has actual or constructive notice of the hostile environment and fails to take prompt remedial action. *See Chambers,* 463 Mich. 297; *Downer v. Detroit Receiving Hosp.*, 191 Mich. App. 232; 477 N.W.2d 146 (1991). *See also Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) ("Because [the plaintiff] did not tell [management] about the harassment until months after the conduct had already ceased -- and after she had already resigned -- she did not provide [the employer] with the opportunity to take remedial action.")

Further, an employer is liable for co-worker harassment only if the employer was negligent in failing to stop the harassment after receiving actual or constructive notice. *Downer, supra*, 191 Mich. App. at 234. *See also Saxton v. AT&T Co.*, 10 F.3d 526 (7th Cir. 1993) (employer not liable when it took remedial action within five weeks of the complaint by transferring of the offending supervisor and allowing the plaintiff to work at home until the transfer was complete).

Plaintiff did not report the alleged sexual harassment by Sorey for over eight months when he raised it in a letter to HR Manager Carr. (Ex. A – Myers Dep. 13). Upon receiving the complaint from Plaintiff, Office Depot immediately allowed Plaintiff to work from home so he would not have to come in contact with Sorey while the

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

situation was being investigated. Office Depot was unable to substantiate that the incident occurred.

Even though Office Depot did not conclude that Plaintiff's claim had merit, efforts were made to facilitate Plaintiff's return to the office. Office Depot scheduled a meeting to coordinate Plaintiff's return to the office and planned to assign Plaintiff to a different supervisor upon his return. (Ex. M - Kelly Dep. 42-45). They were also going to discuss with Plaintiff his territories, managers, and sales expectations to ease his return to work. (Ex. K – 10/28/05 letter). Since Office Depot immediately took steps to remedy the situation once it had notice of Plaintiff's claims that he had been sexually harassed by Sorey, it cannot be liable for hostile environment sexual harassment.

## II. PLAINTIFF CANNOT ESTABLISH *QUID PRO QUO* SEXUAL HARASSMENT

*Quid pro quo* harassment occurs when an employer or one of its agents makes compliance with requests or demands for sexual favors a term or condition of employment, and the harassment culminates in a tangible employment action. *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998). A tangible employment action means a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.

To establish a case of *quid pro quo* sexual harassment, a plaintiff must prove (1) that he or she was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors, and (2) that the employee's

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to a supervisor's sexual demands resulted in a tangible job detriment. *Champion v. Nationwide Sec.*, 450 Mich. 702, 709, 545 N.W.2d 596 (1996); *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 186 (6th Cir. 1992) (citing *Highlander v. KFC Nat'l Mgmt Co.*, 805 F.2d 644, 648 (6th Cir. 1986). A plaintiff must further demonstrate that the alleged harasser had authority over the plaintiff in order to subject the employer to liability. *See, e.g., Sheridan v. Forest Hills Pub. Sch.*, 247 Mich. App. 611, 622–623; 637 N.W.2d 536 (2001); *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 775 (6th Cir. 1996)(*quid pro quo* harassment claim dismissed because the alleged harasser was a co-worker, who never had supervisory authority over the plaintiff).[5]

The sole incident relied on by Plaintiff as the basis for his claim of *quid pro quo* harassment is the alleged attempt by Sorey to kiss him late one night in a bar in Orlando after some regional meetings. Even taking the facts as described by Plaintiff as true, this conduct does not and cannot constitute *quid pro quo* harassment.

According to Plaintiff, "everybody was upstairs drinking, and then – the bathroom was downstairs, and when I went downstairs . . . at some point I was told to enter one of the stalls and Ron Sorey was in the stall and made a pass at me at that point." Plaintiff testified that Sorey "[j]ust pretty much grabbed and tried to kiss me." Plaintiff said that Sorey did not say anything, "it was more just actions." When asked to describe how Sorey "grabbed" him, Plaintiff said "it was more of a putting his arms

[5] The same showing must be made under either Title VII or the ELCRA.

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

around you type like a hug." He admitted that Sorey was fully dressed. (Ex. A - Myers Dep. 9-10.)

Plaintiff "[a]bsolutely" maintained that he was terminated because he did not agree to kiss Sorey. However, when asked for his basis for this claim, Plaintiff explained:

> My basis for saying that is because upon my first meeting, it was made very clear that I was not – did not -- that he did not want me part of the I guess you could call it team going forward, and because we did not really have a working relationship, there was no other cause for wanting -- telling me that he didn't think that I was part of the team.

(Ex. A - Myers Dep. 14). The "first meeting" referred to by Plaintiff was the one he and Sorey had after Sorey became his supervisor in September 2005, **eight months after the alleged attempt to kiss him**.

Plaintiff's claim of *quid pro quo* harassment is flawed. First, at the time of the alleged incident, **Sorey was a co-worker of Plaintiff's; he was not a supervisor**. Sorey was not in a position of authority over Plaintiff with respect to hiring, firing, discipline or job benefits and was not an "agent" of Office Depot's. (Ex. A – Myers Dep. 42). Consequently, Sorey could not have made Plaintiff's submission to unwelcome advances an express or implied condition for receiving job benefits. Second, according to Plaintiff's own account, Sorey did not say anything at the time of the alleged pass. There can be no *quid pro quo* harassment claim without linking any request for sexual favors to a term or condition of employment. *See Champion, supra*, 450 Mich at 709. Sorey's later action in placing Plaintiff on a PIP cannot relate back to the alleged rejection of the kiss. Third, when Sorey became a supervisor, he did not

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

treat Plaintiff differently than other employees. After becoming a supervisor, Sorey met individually with the three employees on his team who had performance issues, asked each of them if they thought the job was a good fit, and subsequently either placed them on a PIP or issued them a letter of concern.

## III. PLAINTIFF CANNOT ESTABLISH RETALIATION

To establish a prima facie claim of retaliation a plaintiff must show that: (1) he engaged in a protected activity; (2) this was known by the defendant; (3) the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Garg v. Macomb Co. Comm. Mental Health Services,* 472 Mich. 263, 273; 696 N.W.2d 646 (2005); *Pena v. Ingham County Road Commission*, 255 Mich. App. 299, 310-311 (2003), *citing Barrett v. Kirtland Community College*, 245 Mich. App. 306, 325 (2001).

Plaintiff bears the burden in showing that the participation in the protected activity was a significant factor in an adverse employment decision. "The significant factor standard requires a showing of more than a causal link." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304 (6th Cir. 1989).

For purposes of this motion, Office Depot does not dispute that Plaintiff engaged in protected activity when he complained about harassment. However, there is no causal connection between such activity and any adverse employment action. The two adverse employment actions taken against Plaintiff – Sorey's placing

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

Plaintiff on a PIP and Office Depot's terminating him -- cannot be linked to any protected activity by Plaintiff.

As described above, Plaintiff was treated the same as other similarly situated employees. After becoming a supervisor, Sorey met with all three of the underperforming members of his team. He asked each of them to consider whether they wanted to remain with Office Depot and then issued either a PIP or a letter of concern. Plaintiff was not singled out.

Further, the time between the concerted activity and the adverse employment action of placing Plaintiff on the PIP was too remote to link the two. *See Comiskey v. Automotive Industry Action Group*, 40 F. Supp. 2d 877, 898, fn. 22 (E.D. Mich. 1999)(four months between memorandum and discharge too remote to establish causal connection); *Booker v. Brown and Williamson*, 879 F.2d 1304, 1314 (6th Cir. 1989)(no causal connection between plaintiff's letter and his demotion one month later); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986)(no causal link between filing of civil rights charge and discharge four months later). When Sorey placed Plaintiff on a PIP, the only complaint Plaintiff had made was in September 2004, one year earlier. In addition, Sorey was not even aware of the complaint. (Ex. B - Sorey Dep. 115-116).

As to the termination, once again, Plaintiff cannot make the necessary showing. The only reason Plaintiff was terminated was that he abandoned his job when he failed to appear for a meeting on October 31, 2005 as directed. Plaintiff had been specifically warned both in a telephone conversation and in a letter that if he did

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

not appear for the meeting, "you will leave us no further option but to end your employment with the company." (Ex. K - 10/28/05 letter). The very purpose of the meeting was to discuss with Plaintiff the outcome of Office Depot's investigation and a "go-forward plan." (Ex. M - Kelly Dep. 49-50). **Plaintiff** made the decision not to appear for the meeting. That was the reason he was terminated, not because of any protected activity.[6]

Moreover, Sorey was not involved in the decision to terminate Plaintiff. He was not consulted about it and had no input. Rather, once the investigation began, it was handled exclusively by Carr and Kelly. (Ex. B - Sorey Dep. 115-116). *Compare Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (statements or conduct of nondecisionmakers insufficient to satisfy a plaintiff's burden of establishing animus); *Krohn v. Sedgwick James of Mich., Inc.*, 244 Mich App. 289, 300-301; 624 N.W.2d 212 (2001) (remark of former supervisor not involved in the decision to terminate the plaintiff's employment not considered as evidence of discrimination).

## IV. PLAINTIFF FAILED TO MITIGATE HIS DAMAGES

If the complaint is not dismissed in its entirety, Office Depot is entitled to summary judgment as to any claim for wage loss and benefits. It is well settled that a plaintiff in an employment discrimination action is required to mitigate his or her damages by seeking and accepting alternative employment. *See, U.S. v. City of Warren*, 138 F.3d 1083, 1098 (6th Cir. 1998); *Morris v. Clawson Tank Co.*, 459 Mich.

[6] Kelly testified that although the meeting was scheduled for 8:00 a.m., Office Depot would wait until close of business that day to process his termination. (Ex. M - Kelly Dep. 52).

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

256 (1998); *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 123 (1994). A plaintiff is "required to make efforts that are reasonable under the circumstances to find employment." *See, Morris*, 459 Mich. at 264 (quoting *Rasheed*, 445 Mich. at 124). A plaintiff who does not make such efforts loses the right to claim lost wages as damages. *Id*.

For some time following the termination of his employment with Office Depot, Plaintiff worked for his domestic partner, Chris Campbell, in Campbell's mortgage business. Plaintiff did not receive payment for that work. Campbell owns the house he and Plaintiff share. As Plaintiff testified: "I have a roof over my head. I guess that would be my payment." (Ex. A - Myers Dep. 63.)

Plaintiff described his efforts to seek employment as going and applying for unemployment, which resulted in his resume being posted on the Michigan Jobs Bank, posting his resume on Monster and making some personal contacts. (Ex. A - Myers Dep. 67-68). He then accepted a job as a contract employee leasing apartments, where he is compensated solely on a commission basis. (Ex. A – Myers Dep. 62). He said he got that job "[s]topping at an open house on the way back from Ann Arbor and running into a builder who asked me if I would be interested in working for him." (Ex. A – Myers Dep. 89). He admitted that since he has been leasing apartments, he has not looked for other employment. (Ex. A - Myers Dep. 89).[7] Although Plaintiff testified that he had been "constantly offered jobs" by customers when he worked for Office Depot and if you are effective in sales,

[7] While he made a general claim that "in the sales world, you're constantly looking," he said that he was "very content" where he is at. (Ex. A - Myers Dep. 89).

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

BUTZEL LONG, ATTORNEYS & COUNSELORS, A PROFESSIONAL CORPORATION

"[p]eople will always ask you if you want a job," he did not remember contacting any of his former customers about a sales job. (Ex. A - Myers Dep. 40, 69, 90).

Since Plaintiff has, at best, only made passing efforts to find a similar job, he has failed to mitigate as a matter of law. This conclusion is bolstered by the fact that Plaintiff has not attempted to supplement the income he is earning from Beacon Hill Apartments. *See*, *Roush v. Kentucky Fried Chicken National Management Company*, 10 F.3d 392, 400 (6th Cir. 1991) (as a matter of law front pay inappropriate because plaintiff "voluntarily chose not to seek alternative or supplemental employment"). Therefore, if the Complaint is not dismissed in its entirety, Office Depot is entitled to summary judgment as to any claim for damages for alleged future wage loss after November 1, 2005.

## CONCLUSION

For the reasons set forth above, Defendant Office Depot, Inc. respectfully requests that the Court grant its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

**BUTZEL LONG**

By: /s/ Lynne E. Deitch
Lynne E. Deitch (P26732)
Katherine Donohue Goudie (P62806)
150 W. Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
Deitch@butzel.com
Goudie@butzel.com
**Attorneys for Defendant Office Depot**

Dated: May 30, 2007
902997/9